**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
──────────────────────────────  )
WILLIAM E. HELLER, et al., as  )
Trustees of, and on behalf     )
of, the ELECTRICAL WORKERS     )
LOCAL NO. 26 PENSION TRUST     )
FUND,                          )
                               )
            Plaintiffs,        )
                               )
       v.                      )     Civil Action No. 03-2662 (GK)
                               )
NICHOLAS APPLEGATE CAPITAL     )
MANAGEMENT, LLC, et al.,       )
                               )
            Defendants.        )
──────────────────────────────  )
```

**MEMORANDUM OPINION**

Plaintiffs, the Trustees of the Electrical Workers Local No. 26 Pension Trust Fund (the "Fund"),[1] bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., on behalf of the Fund seeking recovery of monetary damages for alleged breaches of fiduciary duty by the Fund's investment managers. Defendants are Trust Fund Advisors, Inc. ("TFA"), a corporation with its principal place of business in the District of Columbia, Nicholas Applegate Capital Management, LLC ("NACM"), a Delaware limited liability company with its principal place of business in San Diego, California, and Allianz

---

[1] Plaintiffs are William E. Heller, Ronald Bryant, James Craft, Charles Graham, Francis J. Olshefski, and Ramiro Ramos.

AG ("Allianz"), a German corporation with its principal place of business in Munich.

This matter is before the Court on Allianz's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6) [**Dkt. No. 62**].[2]  Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons stated below, Allianz's Motion is **granted.**

I.   **BACKGROUND**

A.   **Facts**[3]

1.   **The Fund's Relationship with TFA and NACM**

In 1995, the Fund retained TFA and NACM as investment managers for a portion of the Fund's assets.  Am. Compl. ¶ 11.  TFA served as the manager of the assets, and NACM was responsible, as a sub-advisor, for investing a certain portion of the assets in "International Equity" and "Growth Equity & Growth Balanced"

---

[2]  A protective order has been entered in this case to protect "non-public confidential, proprietary or commercially sensitive information."  Aug. 26, 2004 Protective Order ¶ 3 [Dkt. No. 26]. Plaintiffs filed exhibits to their Opposition to the Motion to Dismiss under seal.  Allianz publicly filed similar and/or identical exhibits and obviously has no objection to the release of these materials.  Therefore, this Memorandum Opinion is not filed under seal.

[3]  The facts set forth herein are drawn from the Amended Complaint, declarations submitted to the Court, and evidence obtained by the parties during jurisdictional discovery.  Any conflicts in the parties' versions of the evidence have been construed in favor of the Plaintiffs.  See In re Baan Co. Sec. Litig., 245 F. Supp. 2d 117, 125 (D.D.C. 2003).

investments.  Declaration of Ira R. Mintzer, Oct. 3, 2005 ("Mintzer Decl."), Ex. 1.  The performance of Fund assets managed by TFA and NACM was compared to a benchmark index--the Russell 1000 Growth Index of large capitalization growth stocks.  Am. Compl. ¶ 21.

From 1995 to 2001, Craig Occhialini, an employee of NACM, was the Fund's primary contact person with TFA and NACM.  Id. ¶ 18. Plaintiffs allege that TFA and NACM held Mr. Occhialini out as a "Portfolio Manager" and a "Key Individual."  Id.  Based on these representations, the Fund's Trustees "believed that Mr. Occhialini was a portfolio manager who participated in managing the Fund's account and a key person on that account."  Id. ¶ 19.

Plaintiffs allege that, at some point in 2000, Mr. Occhialini was demoted to a mere marketing role.  Id. ¶ 31.  This change was not disclosed to the Fund's Trustees.  Id.  They only became aware of Mr. Occhialini's changed role, and subsequent departure from NACM, on September 19, 2001.  Id. ¶ 36.

Plaintiffs allege that the portfolio managed by TFA and NACM on behalf of the fund demonstrated stellar returns until the market downturn for large capitalization growth stocks occurred in 2000. Id. ¶ 34.  In the fourth quarter of 1999, for example, these assets appreciated by approximately 35%, compared to approximately 25% for the Russell 1000 benchmark index.  Id. ¶ 21.  By contrast, the portfolio depreciated in value by approximately 25% in the fourth quarter of 2000, compared to a loss of approximately 21% by the

benchmark index.  Id. ¶ 35.  The poor performance of the assets managed by TFA and NACM allegedly corresponded in time with Mr. Occhialini's changed role at NACM.

Once the Trustees of the Fund learned that Mr. Occhialini had left NACM, the Trustees unilaterally voted to terminate TFA's and NACM's management of the Fund's assets.  Id. ¶ 36.  Plaintiffs allege that the failure of the Defendants to disclose the change in Mr. Occhialini's role and subsequent departure from NACM was a breach of fiduciary duty.  Plaintiffs have presented no evidence tying Allianz to Mr. Occhialini's alleged demotion or his departure from NACM.[4]

### 2.  Allianz's Acquisition of NACM in 2000-2001

At some time prior to October 2000, NACM retained an investment bank to explore strategic opportunities with other companies in the financial services industry.  Deposition of Dr. Ilja-Kristin Seewald, Aug. 17, 2005 ("Seewald Dep."), Ex. 26.  A competitive bidding process for the sale of NACM ensued, and Allianz submitted the winning bid.  Id.  The record is silent as to when and where the negotiations between Allianz and NACM occurred, but there is no evidence of any connection between the sale and the

---

[4] Arthur Nicholas, Managing Partner of NACM, testified that he had no recollection of any conversations with Allianz regarding Mr. Occhialini.  Deposition of Arthur Nicholas, July 28, 2005 ("Nicholas Dep."), at 62.

District of Columbia.  The acquisition was publicly announced on October 18, 2000 and the sale closed on January 31, 2001.

Media reports in September 2000 first revealed the possibility that Allianz might purchase NACM.  Am. Compl. ¶ 25.  This revelation apparently came as a surprise to TFA.  On September 19, 2000, Grover McKean, President of TFA, sent a letter to Arthur E. Nicholas, Managing Partner of NACM, complaining that TFA had learned of the possible acquisition of NACM from the Wall Street Journal.  Deposition of Eric S. Sagerman, Aug. 24, 2005 ("Sagerman Dep."), Ex. 26.

### 3.  Communications by Allianz and NACM Regarding the Acquisition

As part of the process of finalizing Allianz's acquisition of NACM, Dr. Ilja-Kristin Seewald, Head of Financial Communications for Allianz and Richard Shaughnessy, who was at that time Head of Communications for NACM, worked together to create documents announcing the acquisition.  Sagerman Dep., Ex. 10.  As part of this effort, Mr. Shaughnessy created a timetable for communicating with various constituencies.  Deposition of Richard F. Shaughnessy, July 27, 2005 ("Shaughnessy Dep."), at 107, Ex. 22; Seewald Dep., Ex. 24.  Dr. Seewald drafted a document titled "Suggestions for internal and external [c]ommunications" that discussed "[s]takeholders who might wish to be informed."  Seewald Dep., Ex. 46.  The document gave NACM the responsibility for informing its own major clients of the acquisition.  Id. at 88-89, Ex. 46.

Seewald and Shaughnessy exchanged multiple drafts of the press release announcing the acquisition. Seewald Dep., Exs. 37-45. The two drafted a "Master Q&A" document to assist in responding to anticipated inquiries from the media. Seewald Dep. at 61, Ex. 27. Dr. Seewald also drafted two documents containing information that was incorporated into the "Master Q&A" document. Seewald Dep., Exs. 33-34. NACM also separately created a document titled "Questions and Answers for Nicholas-Applegate Clients" to be used to answer questions from NACM clients which was similar in format and content to the "Master Q&A" document. Shaughnessy Dep. at 124-25, Ex. 24. Dr. Seewald testified at her deposition that she had never seen this separate Q&A document for NACM clients in that format. Seewald Dep. at 61; Ex. 26.

NACM prepared form "Dear Client" letters to be sent to its clients announcing the acquisition. See id., Ex. 13. One such "Dear Client" letter was sent on October 18, 2000 to Cathy Humphrey at TFA. Shaugnessy Dep., Ex. 44. The letter was accompanied by a copy of the press release announcing the acquisition. Declaration of Seth Richardson, Aug. 25, 2004 ("Richardson Decl."), Ex. D. Plaintiffs have not pointed to any other evidence of communications between NACM and TFA that is relevant here, or of any communications whatsoever between Allianz and TFA.

### 4. TFA's October 18, 2000 Letter to the Fund (the "Hartman Letter")

Later in the day on October 18, 2000, Kenneth T. Hartman, Regional Vice President of TFA, drafted and sent a letter informing the Fund of Allianz's acquisition of NACM. Id., Ex. C.[5]  Mr. Hartman enclosed a copy of the press release TFA had earlier received from NACM. Id., Ex. D.  The letter was sent from TFA's

---

[5]    The text of the letter stated:

Since 1993, Trust Fund Advisors has had an exclusive strategic alliance with Nicholas-Applegate Capital Management, under which Nicholas-Applegate provides domestic growth equity management services to TFA's clients - jointly managed pension funds.  The alliance between our firms has been extremely successful and the excellent returns generated by Nicholas-Applegate have benefitted TFA's clients and their pension fund beneficiaries.

Nicholas-Applegate Capital Management announced today that their firm has agreed to be acquired by Allianz AG.  Under the agreement, Nicholas-Applegate will maintain operational autonomy and the 34 partners of Nicholas-Applegate have signed long-term employment agreements.  The firm will continue to be located in San Diego and all the current portfolio management teams will remain unchanged.  A copy of a press release detailing the purchase is attached for your review.

It is important to note that the strategic alliance between Trust Fund Advisors and Nicholas-Applegate Capital Management will remain unchanged.  All TFA client portfolios will continue to be managed with the same growth equity investment philosophy and process as in the past.

TFA and Nicholas-Applegate look forward to many more years of successful cooperation in serving the jointly trusteed pension plan market.  Thank you for your continued support, and of course, please do not hesitate to call me if you have any questions.

7

offices in the District of Columbia to the Fund's agent: Edward

Godfrey of National Fiduciary Advisors in Los Angeles, California.

Id., Ex. C.

There is no evidence in the record that TFA was instructed by

either NACM or Allianz to send the Hartman Letter, although much of

the second paragraph of the Hartman Letter paraphrased portions of

NACM's October 18, 2000 "Dear Client" letter.   In their

depositions, Arthur Nicholas, Richard Shaughnessy, and Eric

Sagerman--all NACM employees--testified that they had never seen

the Hartman Letter before.   Nicholas Dep. at 77; Shaughnessy Dep.

at 149; Sagerman Dep. at 54.   Nor is there any evidence of any

discussion between TFA, NACM, or Allianz, about informing the Fund

of Allianz's acquisition of NACM.   See Shaughnessy Dep. at 150

(witness not aware of any discussions with anyone regarding a

letter to go to TFA).[6]

### 5.   Allianz Discussions Regarding NACM Personnel

In August 2000, approximately two months prior to the

announcement of the acquisition, Allianz's internal documents

reflect discussions regarding the future of key NACM personnel

following the acquisition. Seewald Dep., Ex. 48.  A facsimile from

Dr. Joachim Faber, a member of Allianz's Board of Directors, to

Milton Berlinski lists "[p]osition of Art Nicholas, John McDonnell,

---

[6]  Allianz also stated in its Responses to Plaintiffs' First
Set of Requests for Production of Documents that it had no
documents relating to the Hartman Letter.

and Cathrine [sic] Somhegyi after a transaction" and "[r]etention of key people after a transaction" as topics worth being discussed at an upcoming meeting.   Id.   Other Allianz documents reflect additional discussions about retaining key NACM employees.  Seewald Dep., Exs. 49-50.  There are no references in these documents to Mr. Occhialini.

### 6.   Allianz's Contacts with the District of Columbia

Allianz is a corporation organized under the laws of Germany with its principal place of business in Munich.  Declaration of Costanza Loser, July 21, 2004 ("Loser Decl."), ¶ 2.

Allianz is not licensed to do business in the District of Columbia.  Id. ¶ 4.  It does not keep an office, id. ¶ 5, or own or lease real property in the District.  Id. ¶ 6.  It does not maintain officers, directors, or employees in the District.  Id. ¶ 7.  Nor does it keep a telephone listing, id. ¶ 8, or a bank account in the District of Columbia.  Id. ¶ 9.

### 7.   Allianz's Relationship with NACM and TFA

NACM is a subsidiary of Allianz.  Declaration of Stewart Smith, July 22, 2004 ("Smith Decl.") ¶¶ 2-3.  NACM was originally acquired in January 2001 by Allianz of America, Inc., a subsidiary of Allianz, which is not a defendant in this case.  Id. ¶ 2.  NACM is now held by Allianz through a complicated series of subsidiary relationships.  Id. ¶ 3.

Allianz maintains that NACM is operationally autonomous.  Id.
¶ 4.  "Allianz AG does not exercise control over NACM's day-to-day
operations, and Allianz AG has not done so from the time NACM
became a subsidiary of Allianz AG to the present."  Id.; see also
Declaration of Dr. Helga Jung, Sept. 16, 2004 ("Jung Decl."), ¶ 2.

NACM officers, including Arthur Nicholas, assumed that NACM
would remain autonomous following the acquisition:

> Q.   What was your understanding of what the
>      relationship would be between Allianz and NACM
>      following the merger?  I'm asking for your
>      understanding prior to the time the merger was to
>      take place.
>
> A.   In essence, that the firm was sold to Allianz, or
>      would be when the transaction closed, and that the
>      firm would enjoy significant autonomy.

Nicholas Dep. at 31-32.  Eric Sagerman, a NACM partner, testified
at his deposition that "[t]here was no disagreement between Allianz
and Nicholas Applegate that I was aware of that [NACM] would be an
independent company."  Sagerman Dep. at 72.  A document drafted by
Dr. Seewald states that "[t]he operational autonomy and ongoing
profit-participation stake in the business coupled with Allianz's
decentralized management structure make it clear that Nicholas
Applegate's professionals will continue to control the company."
Seewald Dep., Ex. 33.

There is no evidence of any relationship between Allianz and
TFA.

**B.    Procedural History**

Allianz filed a Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction on July 23, 2004.  [Dkt. No. 16].  In their Opposition to the Motion, Plaintiffs argued only that Allianz's Motion should be denied pending jurisdictional discovery. [Dkt. No. 25].  On April 28, 2005, the Court denied Allianz's Motion pending completion of jurisdictional discovery.  [Dkt. No. 40].

Plaintiffs conducted four months of jurisdictional discovery. They took the depositions of the five following witnesses: (1) Dr. Ilja-Kristin Seewald, Head of Corporate Communications for Allianz; (2) Richard F. Shaughnessy, former Head of Communications for NACM; (3) Arthur Nicholas, NACM's Managing Partner; (4) Eric Sagerman, NACM partner and head of marketing; and (5) Theodore Sullivan, Chief Operating Officer and Corporate Secretary of Allianz of America, Inc.  Plaintiffs also obtained thousands of documents from Allianz.

Following the conclusion of jurisdictional discovery, Allianz renewed its Motion to Dismiss for Lack of Personal Jurisdiction on September 15, 2005.  [Dkt. No. 62].

**II. STANDARD OF REVIEW**

The parties disagree about the proper standard of review to be applied here.  Allianz argues that because extensive jurisdictional discovery has occurred, "[p]laintiffs must establish personal

jurisdiction...by a preponderance of the evidence." _In re Vitamins Antitrust Litig._, 270 F. Supp. 2d 15, 20 (D.D.C. 2003); _see_ _also_ _Shapiro, Lifschitz & Schram, P.C. v. Hazard_, 24 F. Supp. 2d 66, 70 (D.D.C. 1998).

Plaintiffs counter that where jurisdictional discovery has occurred, but no evidentiary hearing has been held, the plaintiff need only make a "factually documented" prima facie showing that personal jurisdiction exists. _In re Baan Co. Sec. Litig._, 245 F. Supp. 2d at 125. Under this standard, "[c]onclusory statements are inadequate; plaintiffs must allege specific acts connecting defendant with the forum and must back up those allegations with concrete evidence." _Id._ (internal quotation marks and citations omitted). In that case, the court credited plaintiff's evidence as true. _Id._ The "defendants' evidence is relevant, [but] any conflicts between the parties' versions of the evidence are to be resolved in plaintiffs' favor." _Id._

This Circuit has not yet decided what standard of proof should govern a motion to dismiss for lack of personal jurisdiction when jurisdictional discovery has been completed but no evidentiary hearing has been held. _Id._ at 124.

In _In re Baan Co. Sec. Litig._, Judge Ellen S. Huvelle analyzed the practice in other Circuits and concluded that the "factually documented" prima facie standard was most appropriate. _Id._ at 124-

25 (finding that similar standard had been adopted by First and Second Circuits).

Both Chief Judge Thomas F. Hogan, see In re Vitamins Antitrust Litig., 270 F. Supp. 2d at 20, and Judge Paul L. Friedman, see Jung v. Ass'n of Am. Med. Colls., 300 F. Supp. 2d 119, 128 (D.D.C. 2004), applied a stricter preponderance of the evidence standard. They relied on Shapiro, Lifschitz & Schram, 24 F. Supp. 2d at 69-70, as authority for the preponderance standard, which in turn relies on authority from the United States Court of Appeals for the Second Circuit. See Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990).

Since Landoil Resources, however, the Second Circuit has clarified the standard it applies. See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). The Metro. Life court held that the preponderance standard applied only if the district court had already held an evidentiary hearing. It concluded that the plaintiff need only make a prima facie showing that personal jurisdiction existed if no evidentiary hearing had been held. Id. Thus, the most recent case law from the Second Circuit adopts the same standard adopted by Judge Huvelle in In re Baan Co. Sec. Litig.

Regardless of the lack of decisive precedent in this Circuit, the Court need not address the proper standard to be applied here, because Plaintiff cannot make the factual showing necessary under

13

either standard.  At the very least, once jurisdictional discovery has been completed, Plaintiffs cannot continue to rely on broad generalities and conclusory statements to establish the existence of personal jurisdiction.  They must allege specific facts that demonstrate sufficient contacts between the Defendant and the District of Columbia to justify the assertion of personal jurisdiction.  To the extent that there is a conflict over actual facts, the evidence will be construed in favor of the Plaintiffs. However, the Court is free to draw reasonable and appropriate inferences and conclusions, even though they may be in dispute, from underlying facts which are not in dispute.

## III. ANALYSIS

Allianz argues that Plaintiffs have failed to show sufficient contacts between Allianz and the District of Columbia to find specific personal jurisdiction under the District's long-arm statute, D.C. Code § 13-423(a)(1), and the Due Process Clause of the Fifth Amendment.  Plaintiffs argue that Allianz transacted business within the District of Columbia and is subject to specific personal jurisdiction under the long-arm statute.[7]  They contend that Allianz has sufficient contacts with the District of Columbia to find personal jurisdiction under the Due Process Clause.

---

[7] Plaintiffs do not argue that personal jurisdiction exists under the nationwide service provisions of Fed. R. Civ. P. 4(k)(2). They also do not argue that general personal jurisdiction exists over Allianz.

Specifically, Plaintiffs argue that Allianz directly transacted business in the District of Columbia because it orchestrated the communications effort surrounding its acquisition of NACM. According to Plaintiffs, Allianz caused the allegedly misleading "Dear Client" letter to be sent by NACM to TFA in the District of Columbia, and TFA then used this letter as a model for the Hartman Letter it sent to the Fund from the District of Columbia.

Plaintiffs argue in the alternative that Allianz transacted business in the District of Columbia through its agents, NACM and TFA. They maintain that Allianz directed NACM to send allegedly misleading correspondence to TFA and directed TFA to send the Hartman Letter to the Fund.

**A.    The District of Columbia's Long-Arm Statute**

The District's long-arm statute permits a court to exercise specific personal jurisdiction over a non-resident defendant that transacts any business in the District of Columbia. D.C. Code § 13-423(a)(1).[8] The sweep of the "transacting any business" clause

---

[8] The statute provides in relevant part:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

    (1) transacting any business in the District of Columbia;...

D.C. Code § 13-423(a)(1).

"covers any transaction of business in the District of Columbia that can be reached jurisdictionally without offending the due process clause." Mouzavires v. Baxter, 434 A.2d 988, 993 (D.C. 1981). "[T]o determine whether the statute can reach the conduct at issue, we must consider whether [plaintiffs] had sufficient contacts with the District such that the assertion of personal jurisdiction comports with due process." Id.

For the exercise of personal jurisdiction to be consistent with the Due Process Clause, a non-resident defendant must have certain minimum contacts with the forum such that "traditional notions of fair play and substantial justice" are not offended. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

"'[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). This purposeful availment requirement ensures that personal jurisdiction shall not arise "solely as a result of random, fortuitous, or attenuated contacts." Id. (internal quotation marks omitted). Nor can the "'unilateral activity of another party or a third person'" give rise to personal jurisdiction. Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 444 U.S. 408, 417 (1984)).

Jurisdiction is proper, however, where "actions by the defendant himself" establishes a "substantial connection" with the forum.  Id. at 476 (emphasis in original).  Indeed, a single act, so long as it creates this "substantial connection," is sufficient. Id. at 475, n.18.

Section 13-423(a)(1) provides for specific, and not general personal jurisdiction.  Therefore, the plaintiff's claims must be related to the acts that form the basis for personal jurisdiction. Schwartz v. CDI Japan, Ltd., 938 F. Supp. 1, 5 (D.D.C. 1996).

### B. Plaintiffs Have Not Made a Sufficient Showing that Allianz Has Minimum Contacts with the District of Columbia

There is little real dispute between the parties regarding the underlying facts at issue here.  Instead, the parties disagree about the legal significance of the facts established in jurisdictional discovery.

Allianz argues that there is no evidence in the record tying it to the District of Columbia.  It claims that it has no connection to the Hartman Letter or to the employment status or role of NACM employee Craig Occhialini.  Plaintiffs respond that (1) Allianz orchestrated the announcement of the NACM acquisition and crafted the themes that NACM would use in communicating about the acquisition; (2) Allianz provided NACM and TFA with the template for the allegedly misleading Hartman Letter, which was sent by TFA to the Fund from the District of Columbia; and (3)

17

there are substantial contacts between Allianz and the United States as a whole.

For the purposes of establishing jurisdiction under the District of Columbia long-arm statute, it is contacts with the District, and not the nation as a whole, that are critical. <u>Dooley v. United Techs. Corp.</u>, 803 F. Supp. 428, 434 (D.D.C. 1992). As the following facts demonstrate, Plaintiffs have failed to meet their burden to show the existence of such contacts.

Allianz is a German corporation. It does not maintain offices or employees in the District of Columbia. It does not own real property or maintain a bank account here.

Allianz conducted negotiations to purchase California-based NACM in 2000. There is no evidence in the record that those negotiations were related in any way to the District of Columbia. Nor is there any evidence that NACM's relationship with District-based TFA was a factor in the negotiations and eventual acquisition of NACM.

Representatives from Allianz and NACM, employed in Germany and California, respectively, jointly crafted a communications strategy to announce the acquisition. NACM was given responsibility to inform its major clients about the sale. NACM created a document titled "Questions and Answers for Nicholas-Applegate Clients" to answer questions from its major clients and drafted form "Dear Client" letters informing clients of the acquisition. Although an

Allianz representative, Dr. Seewald, played a role in drafting the similar "Master Q&A" document, there is no evidence that anyone from Allianz was aware of, or played any role in the creation of, the "Questions and Answers for Nicholas-Applegate Clients" document, or the form "Dear Client" letters.

One such letter was sent by NACM to TFA in the District of Columbia on October 18, 2000.  It was accompanied by a press release that was jointly created by Dr. Seewald of Allianz and Mr. Shaughnessy of NACM.  There is no evidence that Dr. Seewald, or anyone else at Allianz, was aware that this press release was included in the form "Dear Client" letter sent to TFA.

Plaintiffs have failed to show that Allianz purposefully availed itself of the protections of District of Columbia law and therefore had fair warning that it could be haled before a District of Columbia court.  <u>Burger King</u>, 471 U.S. at 472.  Instead, from Allianz's perspective, the fact that NACM sent the October 18, 2000 "Dear Client" letter to TFA in the District of Columbia, and that TFA sent the Hartman Letter to the Fund from the District of Columbia are "random" and "fortuitous" events.  <u>Id.</u> at 475.  These attenuated contacts with the District of Columbia are certainly not the type of "deliberate" and "substantial" contacts required under the Due Process Clause.  <u>Id.</u> at 475-76.  Instead, the sending of the "Dear Client" and Hartman Letters represent the "unilateral

activity of a third party or a third person," <u>id.</u> at 475, and cannot form the basis for personal jurisdiction.[9]

Plaintiffs must also show that Allianz's purported contacts with the District of Columbia gave rise to the claims alleged in the Plaintiffs' Amended Complaint. <u>Schwartz</u>, 938 F. Supp. at 5. Plaintiffs' claims in this case are based on the allegation that Defendants failed to disclose Mr. Occhialini's demotion and later departure from NACM, thus breaching their fiduciary duties to the Fund under ERISA. Although Plaintiffs point to evidence that Allianz was concerned about identifying and retaining key NACM personnel following the acquisition, there is no evidence that these discussions ever referred to Mr. Occhialini or that Allianz had any knowledge of who he was. Plaintiffs offer no other evidence linking Allianz to Mr. Occhialini or his alleged demotion and departure.

The cases chiefly relied upon by Plaintiffs do not support their argument that assertion of personal jurisdiction over Allianz is proper. <u>Schwartz</u> and <u>Overseas Partners, Inc. v. Progen Musavirlik Ve Yonetim Hizmetleri, Ltd. Sikerti</u>, 15 F. Supp. 2d 47 (D.D.C. 1998), involve contractual relationships with District residents and performance of those contracts in the District of Columbia. <u>Schwartz</u>, 938 F. Supp. at 6 (contract with District

---

[9] As discussed <u>infra</u>, the actions of NACM and TFA cannot be attributed to Allianz because Plaintiffs have failed to show the existence of an agency relationship between Allianz and either NACM or TFA.

resident required at least partial performance in the District); Overseas Partners, 15 F. Supp. 2d at 51 (contract negotiated in the District and required performance of significant portions of contract in the District).  Here, there is no evidence of any contractual relationship between Allianz and District-based TFA, nor have Plaintiffs presented evidence of any negotiations in the District of Columbia, or any contracts that involve performance in, or otherwise impact, the District of Columbia.

In sum, the Plaintiffs have not made a sufficient showing that Allianz has minimum contacts with the District of Columbia adequate to permit the Court to exercise personal jurisdiction over it under the District's long-arm statute and consistent with the strictures of the Due Process Clause.

**C.   Plaintiffs Have Not Made a Sufficient Showing that Allianz Has Transacted Business in the District of Columbia through an Agent or Co-Venturing Relationship**

Personal jurisdiction may also exist if a person transacts business in the District of Columbia through an agent.  D.C. Code § 13-423(a).  Allianz argues that there is no evidence that either NACM or TFA is its agent.  Plaintiffs argue that Allianz has a principal-agent relationship with NACM and TFA, and the Court may therefore exercise personal jurisdiction over Allianz.[10]

_____

[10] Plaintiffs argue that NACM and TFA are agents of Allianz through direct authorization and also constructively through a co-venturer relationship.  See Brown v. Artery Org., Inc., 654 F. Supp. 1106, 1111 (D.D.C. 1987).  Plaintiffs are not relying on the
(continued...)

"Ordinarily, a corporation's contacts with a forum may not be attributed to affiliated corporations." Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 62 F. Supp. 2d 13, 19 (D.D.C. 1999). "Notwithstanding the fact that two corporations may be extremely interrelated, each is deemed to have an independent existence. The mere ownership of the capital stock of one corporation by another does not create an identity of corporate interest between the two companies, or create the relationship of principal and agent...." AGS Int'l, 346 F. Supp. 2d at 92 (quoting Diamond Chem. Co. v. Atofina Chems., Inc., 268 F. Supp. 2d 1, 18 (D.D.C. 2003)).

"Generally an agency relationship results when one person authorizes another to act on his behalf subject to his control, and the other person consents to do so." Smith v. Jenkins, 452 A.2d 333, 335 (D.C. 1982). "Without control over the forum state actor, it cannot be said that the non-resident defendant is purposefully avail[ing] itself of the privilege of conducting activities within the forum State." Id. (internal quotation marks omitted). To demonstrate that a subsidiary corporation acts as an agent of its parent, a plaintiff must demonstrate that the subsidiary is not "a mere investment, but rather an alternative means of transacting business by the parent corporation." Material Supply Int'l, 62 F. Supp. 2d at 21 (internal quotation marks omitted).

---

[10](...continued)
theory that NACM or TFA was the alter ego of Allianz.

Plaintiffs have provided no evidence of an agency relationship between Allianz and either TFA or NACM.  There has been no showing that Allianz controlled TFA, or instructed TFA to send the Hartman Letter to the Fund.  Indeed, despite extensive jurisdictional discovery, the Plaintiffs did not depose a TFA officer or employee.

Plaintiffs argue that Allianz provided TFA with a "template" for the Hartman Letter in the form of the "Dear Client" letter sent by NACM to TFA on October 18, 2000, announcing Allianz's acquisition of NACM.  As discussed above, there is no evidence tying Allianz to the drafting and sending of that letter.  Moreover, although the Hartman Letter contained some of the same information as the "Dear Client" letter, the two letters differed substantially in both content and format.

Plaintiffs have also failed to demonstrate that NACM acted as Allianz's agent.  Plaintiffs make much of the fact that NACM is now a subsidiary of Allianz.  However, the record makes clear that NACM is operationally autonomous.  The depositions of Arthur Nicholas and Eric Sagerman demonstrate that, although Allianz would assume ownership of NACM, NACM would "enjoy significant autonomy," Nicholas Dep. at 32, and that NACM would remain "an independent company."  Sagerman Dep. at 72.  Plaintiffs have offered no evidence to rebut the Declaration of Stewart Smith that "Allianz AG does not exercise control over NACM's day-to-day operations, and Allianz AG has not done so from the time NACM became a subsidiary

of Allianz AG to the present." Smith Decl. ¶ 4. More specifically, Plaintiffs have not shown that Allianz directed NACM to send the October 18, 2000 "Dear Client" letter to TFA announcing the acquisition.

Because Plaintiffs cannot show that Allianz had a principal-agent relationship with either NACM or TFA, it cannot be said that Allianz has purposefully availed itself of the protection of District of Columbia law. See Smith, 452 A.2d at 335.

Plaintiffs have failed to make a sufficient showing that Allianz is subject to personal jurisdiction in the District of Columbia. Therefore, it is unnecessary for the Court to address Allianz's argument that the Amended Complaint fails to state a claim under ERISA.

**IV. CONCLUSION**

For the foregoing reasons, Allianz's Motion to Dismiss for Lack of Personal Jurisdiction [**Dkt. No. 62**] is **granted.** An order shall issue with this Memorandum Opinion.


July 26, 2007                              /s/_____
                                          Gladys Kessler
                                          United States District Judge


**Copies to: Attorneys of record via ECF**